UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

ROBERT E. SIMMONS,                )
                                  )
                    Movant,       )
                                  )
        vs.                       )          Case No. 1:14CV00097 SNLJ
                                  )
UNITED STATES OF AMERICA,         )
                                  )
                    Respondent.   )

## MEMORANDUM AND ORDER

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct

sentence by Robert E. Simmons, a person in federal custody. On July 17, 2012, Simmons

was found guilty by a jury of the offense of felon in possession of a firearm, and on

October 14, 2012, this Court sentenced Simmons to the Bureau of Prisons for a term of

87 months, a sentence within the sentencing guideline range. Simmons' § 2255 action,

which is based on several allegations of ineffective assistance of counsel, is fully briefed

and ripe for disposition.

### FACTS

**A. The Indictment.**

On October 20, 2011, a Grand Jury in the Eastern District of Missouri,

Southeastern Division, returned a one-count Indictment against Robert E. Simmons. The

Indictment charged that on or about May 4, 2011, Simmons possessed a firearm that had

affected interstate commerce after Simmons had been convicted of a felony, in violation

of Title 18, United States Code, Section 922(g)(1). On October 20, 2011, Simmons made

his initial appearance on the federal charge. After the initial appearance, the Federal Public Defenders Office was appointed to represent Simmons. Michael A. Skrien represented Simmons after that appointment. Simmons was arraigned on October 26, 2011. At that arraignment, Simmons pled not guilty to the charge.

**B. Pretrial Motions.**

On November 28, 2011, Simmons's attorney filed a Motion to Suppress Evidence and Statements. Simmons contended that the search of Simmons's vehicle that resulted in the discovery of the pistol Simmons was charged with possessing was an unconstitutional search. Simmons' motion also asked that the Court suppress his confession that occurred after his arrest, again, on Constitutional grounds. The Government filed its Response to Simmons' Motion on December 19, 2011. On December 21, 2011, a hearing was held to determine whether evidence in Simmons's case should be suppressed.

On April 4, 2012, United States Magistrate Judge Lewis M. Blanton issued his Report and Recommendation, recommending that Simmons' Motion to Suppress Evidence and Statements be denied. On April 18, 2012, Simmons' attorney filed an Objection to the Report and Recommendation. On the same day, this Court entered an order adopting the Report and Recommendation of Judge Blanton and denied Simmons' Motion to Suppress Evidence and Statements.

This Court then set the case for a jury trial on July 17, 2012.

**C. Trial.**

The trial of Simmons took one day. The Government called the following witnesses who provided the proof set forth below.

On May 4, 2011, two Southeast Missouri Drug Task Force officers were conducting surveillance on a house in Cape Girardeau, Missouri. The officers, Mike Alford and Jason Young, were trying to identify people entering and leaving the residence. The officers were parked in an unmarked car about forty yards from the residence located at 41 South Hanover. (Trial Tr. pp. 35-36)

Around 10:15 p.m., a silver Chevrolet PT Cruiser drove down the street and parked in front of the residence. Two men got out of the vehicle and went inside the house. The officers did not recognize either of the men and decided to check the license number on the car. The officers drove their vehicle past the PT Cruiser, obtained the license number and returned to the same general area to park and watch the home. One officer reported the license number to his dispatcher, who informed the officers that it belonged to a rental vehicle. The officers were aware that rental vehicles are sometimes used in criminal activities. (Trial Tr. pp. 36-38, 40)

After a short time, two men came out of the residence, entered the PT Cruiser, and drove away. The two surveillance officers followed in their car and observed the PT Cruiser commit two different traffic violations. The officers contacted Brandon Farmer, a Cape Girardeau police officer, and asked him to stop the PT Cruiser for the traffic offenses and to identify the occupants. (Trial Tr. pp. 38-39)

Cape Girardeau police officers Brandon Farmer and William Underwood were patrolling that area of Cape Girardeau when the call came in. The PT Cruiser stopped on the side of the road at about the same time as the surveillance officers requested the

traffic stop. Farmer and Underwood arrived on the scene while the PT Cruiser was parked on the side of the road. (Trial Tr. pp. 39-40)

Officer Farmer got out of his patrol car and began walking up to the PT Cruiser. The driver got out and started walking away. Farmer stopped the driver and started speaking to him. Farmer recognized the driver, Robert E. Simmons, and the passenger, Jerome Bridges. Farmer asked Simmons for consent to search the car. Simmons agreed to the search. Officer Underwood watched both Simmons and Bridges at the side of the roadway while Farmer conducted the search. Farmer looked under the passenger seat of the PT Cruiser and found a Jimenez, .380 caliber pistol, bearing serial number 143384. That pistol was manufactured in the state of Nevada and therefore traveled in interstate commerce before its discovery in Missouri. It was loaded with five rounds of ammunition. Farmer described the pistol as a "small gun." (Trial Tr. pp. 34, 89-94)

Officer Mike Alford was present at the Cape Girardeau city jail when both Simmons and Bridges were being processed. Simmons was in the holding cell and Bridges was in the nearby booking area. Alford overheard a conversation between the two men. Bridges asked Simmons why he would allow Bridges to "take his charge." Simmons replied that he would take care of it. (Trial Tr. pp. 46-48)

Officer Farmer also heard this conversation, but remembered different words. He reported that Bridges and Simmons were arguing and upset and that Bridges made the statement that he "couldn't go down for this." Farmer then heard Simmons make a statement to the effect of: "I've got this, cuz. I've done time. I'll do it again." (Trial Tr. pp. 94-96)

4

Lakeisha Lee, a resident of Cape Girardeau, Missouri, is Jerome Bridges' cousin. She knew Simmons through her children's babysitter. Lee and Simmons had rented the PT Cruiser shortly before Simmons' arrest. After renting the car, Lee and Simmons drove to Sikeston, Missouri. During the drive, Lee observed Simmons take a handgun from his person and put it in the side door pocket of the PT Cruiser. Simmons stated that he might have issues with someone in Sikeston and that he did not know who he was going to run into. Lee only saw the butt of the handgun, which she described as black, and saw that it was a small firearm. Lee agreed that the handgun that she saw in Simmons' possession on that drive was similar in appearance to the firearm taken from the PT Cruiser by Officer Farmer. (Trial Tr. pp. 51-57)

Lee had contact with Simmons and Bridges the day after their arrest. She had driven to the city jail to pick up Jerome Bridges. Simmons came out of the jail at the same time as Bridges. Lee agreed to give Simmons a ride back to his home. At that time, Lee knew that a handgun had been found in the PT Cruiser. Simmons told her that "nobody had anything to worry about; that he took his weight." Lee understood that Simmons meant that he told the police that the firearm was his. On cross-examination, Lee testified that she had heard that Simmons received the handgun from Jamarcus Jones. (Trial Tr. pp. 58-59, 79-81)

The day after the arrest of Simmons and Bridges, Detective Brian Vassalli and ATF Special Agent David Diveley met with Simmons at the Cape Girardeau city jail. Diveley asked Simmons about the firearm. Simmons replied that the pistol was his and that he had obtained the firearm from Shalimar Ross. Simmons said that Bridges was

having a "feud" with someone and that was the reason for possessing the firearm. Simmons said they did not intend to hurt anyone and that he had the firearm "just in case." Simmons reported that he did not have to pay for the firearm because Ross had given it to him around April 30, 2011. (Trial Tr. pp. 105-36)

At the beginning of that trial, Simmons and the Government presented their Stipulation that Simmons was a previously convicted felon on the date of the federal offense and that the Jimenez pistol was a firearm as defined by federal statutes and that it affected interstate commerce. (Trial Tr. p. 34) The Government presented its evidence and rested. Simmons rested without presenting evidence. The jury was instructed and closing arguments were made by both parties. After deliberation, the jury returned a verdict finding Simmons guilty of being a felon in possession of a firearm. (CR, 20) This Court set Simmons' sentencing for October 15, 2012.

**D. The Presentence Investigation Report.**

A Presentence Investigation Report (P.S.R.) was prepared by United States Probation Officer Paul H. Boyd. That report recommended that Simmons' base offense level be set at 20, pursuant to U.S.S.G., § 2K2.1(a)(4)(A), because Simmons had a previous felony conviction for a qualifying controlled substance offense. (P.S.R., ¶ 18-26) Simmons had several felony and misdemeanor convictions, resulting in 26 criminal history points and a Criminal History Category of VI. His Guideline sentencing range was 70 to 87 months. (P.S.R., ¶¶ 46, 75)

**E. Simmons' Pro-Se Motions.**

On July 25, 2012, Simmons filed a motion styled "Defendant's Motion for Ineffective Assistance of Counsel." That motion alleged that (1) his attorney failed to file post-trial motions; (2) his counsel failed to file motions requested by Simmons; (3) his counsel failed to challenge the Indictment, chain of custody and failed to raise issues regarding violations of Simmons's Due Process Rights, failed to challenge statements from Government witnesses and failed to challenge the evidence based on DNA and laboratory tests; (4) his counsel failed to "expel" officers' reports as improperly written and for the lack of recording of their interviews; (5) his counsel failed to challenge Governmental misconduct regarding a lack of disclosure to Simmons of some evidence; (6) his counsel did not object, at trial, to the Government's presenting evidence that it had not disclosed to Simmons before the trial; (7) his counsel did not file motions to "exclude" evidence; and that (8) his counsel allowed co-counsel to take over "most" of the proceedings without adequate preparation. The Government filed a Response to this Motion on August 23, 2012.

On September 18, 2012, Simmons filed his "Defendant's Motion to Vacate Based on Insufficient Evidence." In that motion, Simmons raised the same issues as were raised in his motion dated July 25, 2012, and included other grounds where he argued that the proof introduced at trial was insufficient to prove his guilty beyond a reasonable doubt or was inadmissible on various grounds.

On September 28, 2012, Simmons filed a motion styled "Writ of Actual Innocence Based on Previously Unknown or Untested Physical Evidence." This motion sought to

have the District Court order that the handgun mentioned in the Indictment be subjected to DNA tests and fingerprint analysis.

The Government filed a Motion for an Upward Departure on October 15, 2012.

**F. The Sentencing Hearing.**

On October 15, 2012, this Court conducted a sentencing hearing and denied each of Simmons' pro se motions. This Court also denied the Government's Motion for an Upward Departure. This Court then sentenced Simmons to serve a period of imprisonment of 87 months, a sentence at the upper end of the applicable Guideline range. Simmons was also ordered to pay a $100 special assessment and was placed on supervised release for two years. (CR, 26-32 (Judgment); Sent. Tr. pp. 202-05) Simmons' attorney objected to the final sentence being substantively unreasonable. (Sent. Tr. p. 206)

**G. The Appeal.**

On October 28, 2012, Simmons filed a Notice of Appeal. Simmons raised two issues in that appeal; (1) whether the 87 month sentence of imprisonment was a reasonable sentence and whether the Government's closing argument that the witness testimony was "uncontroverted" was improper. The Eighth Circuit Court of Appeals affirmed Simmons's conviction and sentence on June 28, 2013, in United States v. Simmons, 513 Fed.Appx. 626 (8th Cir. 2013).

**H. Petition for Post-Conviction Relief Pursuant to § 2255.**

On June 30, 2014, Simmons filed his Petition under 28 U.S.C. § 2255, asking that this Court set aside Simmons' conviction and sentence. Simmons alleges several errors in

his conviction, including (1) that he was actually innocent of the charge and that DNA testing would show his innocence, if the Court would order the firearm to be tested; (2) his counsel failed to conduct pretrial discovery and to file timely motions requested by the defendant; (3) that his counsel failed to object to the Government's witness (Case Agent David Diveley) from sitting at the Government's counsel table during the trial; (4) his counsel made an ineffective closing argument; and (5) the Government violated Simmons' due process rights and rights under the Jencks Act by improperly called Lakeisha Lee as a witness and his counsel failed to object to this impropriety. None of Simmons' complaints have any merit.

## APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual

averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id.*, at 225-6. *See also United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995) *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. 466 U.S. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The movant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "Whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Counsel's performance is considered objectively and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65. Counsel's challenged conduct is viewed as of the time of his representation. "And we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. A reviewing court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The standard to be used in a collateral charge of ineffective assistance of counsel following a guilty plea is governed by *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), which applies the holding of *Strickland* to instances involving guilty pleas. A movant who pleads guilty upon advice from counsel may only contest the voluntary and intelligent character of the plea by establishing that the advice given was not within the range of professional competence required of the attorney in a criminal case. *Lockhart*, 474 U.S. at 56, citing *Tollett v. Henderson*, 411 U. S. at 267.

### DISCUSSION

This Court will address each complaint made by Simmons that he presented in his Petition.

**I.     Simmons is Not Entitled to Have This Court Order That the Handgun be Subjected to DNA Analysis After his Conviction and Sentence.**

Simmons argues in his first point that the pistol he was convicted of possessing was not sent to a laboratory for DNA testing. Simmons alleges that, if that test had been performed, the test would show his "actual innocence" and that another person committed the crime. Simmons appears to contend that the Government had an obligation to have the pistol examined by a laboratory. As a general matter, that same issue was raised by the defendant in *United States v. Villarreal*, 707 F.3d 942, 954 (8th Cir. 2013). Eventually, all parties agreed that the Government does not have the obligation to submit articles for DNA testing. ("Villarreal concedes that the government had no obligation to submit the evidence for DNA testing.") Simmons' contention that the Government was under some obligation to submit any evidence for DNA testing is simply mistaken.

Simmons does not cite the application of any statute, case, rule, regulation or other authority that would require the Government to submit evidence for DNA testing. Simmons does not set out any Constitutional violation for the failure of the Government to obtain DNA testing. The Government is unaware of any authority, under any provision, that would require it to have evidence tested for DNA. Simmons has not set forth any basis for relief under § 2255 that would entitle him to relief. His rights were not violated by the absence of a DNA test and he may not use a § 2255 petition as a vehicle to complain about it now.

The Eighth Circuit has stated that "[t]o establish a valid claim of actual innocence, [a defendant] must 'support his allegations of constitutional error with new reliable evidence… that was not presented at trial,' and demonstrate 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Wadlington v. United States*, 428 F.3d 779, 783 (8th Cir. 2005), quoting *Schlup v. Delo*, 513 U.S. 298, 324, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Simmons has not demonstrated that it is more likely than not that no reasonable juror would have convicted him at trial. Simmons has not produced any new evidence. He merely presupposes that DNA testing would provide some kind of new evidence. At trial, Simmons contended that the handgun belonged to Jerome Bridges. His defense has not changed. The facts haven't changed. In fact, Simmons now seeks to test the very handgun that he originally sought to suppress.

Simmons further alleges that "the evidence was discovered after trial." (2255 Mot. 4) Contrary to this allegation, Simmons claims in his 2255 Motion, and the record

reflects, that Agent David Diveley testified at trial that the gun was not tested for fingerprints. Therefore, the lack of fingerprinting of the gun is not "newly discovered evidence," and this claim should have been raised on direct appeal. Claims which could have been raised on direct appeal and were not so raised are not cognizable pursuant to 28 U.S.C. § 2255 unless the movant can "demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001). Being that Simmons has offered no cause for his failure to assert this claim on direct appeal, and offers nothing more than a baseless accusation for his claim of innocence, his claim of "actual innocence based on newly discovered evidence" should be dismissed. "This standard is strict; a party generally cannot demonstrate actual innocence where there is sufficient evidence to support a conviction." *Wadlington v. United States*, 428 F.3d 779, 783 (8th Cir. 2005). Several witnesses testified to Simmons possession of the gun, and/or to his admitting that the gun belonged to him, including Lakeisha Lee, Officer Brian Vassalli, and Agent David Diveley. (Trial Trans. 56, 109, 136)

Even if a DNA test was conducted, and even if Simmons' DNA was not found, Simmons still isn't entitled to relief. The Government's case was based on eyewitness testimony from several witnesses. Lakeisha Lee had seen Simmons in possession of a similar handgun only a day or so before Simmons' arrest and that Simmons said he had the firearm in case he had trouble with some people in Sikeston. Simmons made a statement in front of two different police officers to the effect that he would "take his own weight," a phrase they attributed to Simmons being willing to accept his own

punishment for his own crime. The Government's case included Simmons' interview with ATF SA Diveley and Detective Vassalli, who reported that Simmons admitted that the firearm was his. Simmons admitted that he had acquired the handgun from another felon. The Government didn't need a DNA test in order to prove Simmons' possession of the firearm. Instead, the Government relied on witness observations and Simmons' admissions. Simmons cannot show that there is any reasonable probability any test that showed another person's DNA on the handgun as being inconsistent with his guilt. Other DNA would only show that another person was in contact with the handgun at some point in time, not that Simmons was innocent.

The standard for relief under § 2255 is for the defendant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . ." Simmons has not demonstrated any basis set out under § 2255 for relief. Simmons' claim is denied.

## II. Simmons' Counsel Filed and Contested Whether Evidence in Simmons' Case Should be Suppressed; Simmons' Other Allegations Should be Dismissed for Failure to Specify Facts for Relief.

Simmons contends that his counsel failed to file proper motions in his case. The record amply demonstrates that his attorneys contested every piece of evidence that they could. Simmons fails to recognize that his attorneys filed a motion to suppress the handgun that was at issue in the Indictment and to suppress Simmons' statements. Simmons also contends that his attorneys failed to conduct pretrial discovery. Again,

Simmons does not recognize that his attorneys filed requests for discovery (DCD 14) or that the Government answered that request (DCD 17). Simmons does not recognize that the magistrate judge ordered limited discovery (DCD 13) or that the Government answered that Order (DCD 16).

Simmons makes these very general allegations of deficiencies on the part of his attorneys, but he fails to state exactly how any of his complaints affected his case. Simmons states that he directed his attorneys to file certain motions, and that they refused to do so, but he fails to tell the Court exactly what motions they were, or what relief he believes that he was entitled to.

Simmons argues that, if his attorneys were to have acted competently, "the proceedings would have been different." Simmons does not specify what errors his attorneys made, nor does he tell us why his trial would have been different in the absence of those errors.

Simmons' complaints are so general, so lacking in factual support and are completely deficient in allowing this Court or anyone else to provide a meaningful review of his claims. The record clearly shows that Simmons' attorneys filed pretrial motions and even had a hearing on whether Simmons' confession or the handgun should be admitted at trial. Simmons doesn't dispute the case record; he merely ignores it. Any claimed failure on the part of Simmons' attorneys must be supported by factual allegations in Simmons' § 2255 Petition, which he has failed to do. In the absence of such specific allegations, Simmons' claim for relief on these grounds are denied. *United States v. Johnson*, 582 F.2d 1186, 1188 (8th Cir. 1978).

### III. Simmons' Attorneys Were Not Ineffective For Failing to Object to the Presence of ATF SA David Diveley Seated at the Government's Table During Trial.

Simmons argues that his attorneys were ineffective for failing to object to ATF SA David Diveley's presence at the Government's counsel table during the trial. Simmons classifies this failure as a "Constitutional" violation, but does not allege what part of the Constitution was violated. Simmons contends that Diveley's presence at the counsel table was unlawful. Relevant authority will demonstrate that the Court may allow a case agent to sit at the Government counsel table during the trial and that his presence at that table is not a violation of any right of Simmons.

Federal Rule of Evidence 615 governs the exclusion of witnesses during a trial. It states:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
> (a) a party who is a natural person;
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
> (d) a person authorized by statute to be present.

FRE, Rule 615.

Case law from this Circuit clearly establishes that a case agent, which Diveley certainly was, may sit at the counsel table during the trial. One such case that considered this question was *United States v. Sykes*, 977 F.2d 1242 (8th Cir. 1992). Sykes made exactly the same argument as is now being made by Simmons; that the presence of a federal case agent sitting at the Government's counsel table and then allowing him to

testify was improper. The *Sykes* Court noted the applicability of FRE 615(2) to such situations:

> Federal Rule of Evidence 615 provides that witnesses may be excluded from hearing the testimony of other witnesses. Rule 615, however, contains exceptions. Federal Rule of Evidence 615(2) states that the rule does not authorize the exclusion of "an officer or employee of a party which is not a natural person designated as its representative by its attorney." The Senate Judiciary Committee's notes to this rule specifically provide that this exception should be interpreted to allow government case agents to remain at the counsel table during the trial. Fed.R.Evid. 615 judiciary committee's notes.

*Sykes*, 977 F.3d at 1245.

The *Sykes* Court noted that the decision to allow the Government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion. *Id*. And, in order to show an abuse of discretion by the trial court, the defendant must show prejudice. *Id*. Simmons has not shown that this Court abused its discretion, nor that he was prejudiced. He makes bald assertions that he was prejudiced, but does not state any facts that occurred during his trial that would show that Diveley's presence at the counsel table caused a different result.

Many other cases in this Circuit have upheld the presence of a case agent at the Government's counsel table during the trial. *See United States v. Iverson*, 90 F.3d 1340, 1342 (8th Cir. 1996); *United States v. Riddle*, 193 F.3d 995, 997 (8th Cir. 1999); *United States v. Williams*, 604 F.2d 1102, 1115 (8th Cir. 1979); and *United States v. Jones*, 687 F.2d 1265, 1268 (8th Cir. 1982). Simmons' attorneys knew that the rules permitted the Government's case agent to sit at the counsel table. They were not ineffective for failing

to make a motion to exclude the Government's case agent from the trial when such motion would have been denied.

### IV. Simmons Has Not Shown That He Suffered Prejudice Due to His Attorney's Closing Argument.

In this issue, Simmons complains that his attorney was ineffective during his closing argument for comparing the Government's witnesses to a talking dog. Simmons concludes by stating that the argument had a "substantial and injurious effect or influence on the jury's verdict." Of course, Simmons does not provide any proof to this effect. His conclusion is merely an unsubstantiated allegation.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Davis v. United States*, 673 F.3d 849, 852 (8th Cir. 2012), citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984). In *Davis*, the defendant had filed a § 2255 petition, alleging that his attorney was ineffective in conducting closing arguments. The *Davis* Court rejected Davis' complaints, noting the District Court's finding that, before any evidence was presented, the District Court informed the jury that the opening and closing statements were intended to help the jury understand the evidence but were not evidence themselves. *Davis*, 673 F.3d at 853. Davis' jury, just like Simmons', was instructed that closing arguments were not evidence. Simmons presents no facts to demonstrate that his jury failed to follow their instructions to the letter.

Moreover, Simmons fails to demonstrate that his attorney's closing arguments were so prejudicial that it is likely he wouldn't have been convicted but for those arguments. The evidence against Simmons was not just beyond a reasonable doubt; it was overwhelming.

Simmons disagrees with the strategy chosen by his attorney, but does not show how his attorney's argument caused him to be convicted. It was the evidence against Simmons that caused him to be convicted, not his attorney's closing argument. Simmons has not established either error by his counsel, nor prejudice. This claim is dismissed without an evidentiary hearing.

## V. Simmons Was Not Entitled to Pretrial Disclosure of Lakeisha Lee as a Government Witness; Nor Did the Government Violate Simmons's Due Process Rights or the Jencks Act by Failing to Notify Simmons's Attorneys That the Government Would Call Lee as a Witness.

Simmons contends that the Government improperly called Lakeisha Lee as a witness without giving him or his attorneys notice that she would be called. Simmons classifies this error as a due process violation and/or a violation of the Jencks Act. He contends that his attorneys were ineffective for failing to object to her testimony. Simmons' complaint is without merit.

Simmons is laboring under the misconception that the Government was required to provide him with the identity of its witnesses before trial and that it was required to provide notice of the substance of their testimony before trial. Simmons does not set out what statute or rule the Government supposedly violated, mainly because there was no violation.

Pretrial discovery is permitted by two different methods; that ordered by the District Court and that requested by the defendant. On October 26, 2011, the Court issued its Order directing the Government to notify the defendant of its intention to use specific evidence at trial pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B). That rule states that, at the arraignment, or as soon afterward as possible, the defendant may request any evidence that the defendant may be entitled to discover under Rule 16. Rule 16 provides that the Government should disclose the following:

The defendant's oral statement made in response to interrogation by a government agent. Rule 16(a)(1)(A)

A copy of the defendant's written or recorded statement. Rule 16(a)(1)(B)

The defendant's prior criminal record. Rule 16(a)(1)(D)

Rule 16 also requires the Government to allow inspection of the following:

Books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items. Rule 16(a)(1)(E).

Reports of examinations or tests. Rule 16(a)(1)(F)

Written summaries of opinions of expert witnesses. Rule 16(a)(1)(G)

Rule 16 also set out several items that are not required to be disclosed by the Government. That rule contains the following item as not being required to be disclosed to the defendant:

Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided by 18 U.S.C. § 3500.

Rule 16(a)(2).

It is clear that the discovery rules do not require the Government to provide witness statements to the defendant before trial, except under the provisions of § 3500, which is known as the Jencks Act. The rule does not require that the Government provide Simmons with any kind of summary of the witness's expected testimony. The only issue is whether the witness's "statement," is actually a statement as defined by the Jencks Act. In Simmons's case, Lakeisha Lee's expected testimony was not in a form that was a "statement" under the Jencks Act. As such, the Government was not required to inform Simmons of the nature of Lee's expected testimony.

The Jencks Act requires the Government to disclose witness statements only under two conditions; (1) that the statements are in a form that they are "adopted" by the witness, and (2) disclosure is required only after the witness testifies for the Government.

Significantly, the Jencks Act does not require the identification of any Government witness before that witness is called. The only thing that is required to be produced is either a (1) statement made by the witness and signed or otherwise adopted by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness, or (3) any other statement made by a witness to a grand jury. Lakeisha Lee was interviewed by ATF SA David Diveley, but the interview did not result in any "statement" as that term is defined by the Jencks Act. Therefore, the Government was not required to provide the substance of that interview with Simmons. Nowhere in any of the requirements of the discovery rules or in § 3500 is there any requirement for the Government to disclose the identity of a witness or the substance of what that witness

might testify to. Simmons is simply mistaken as to what the Government was required to do.

In any event, the record discloses that the Government informed Simmons' counsel of witness Lakeisha Lee by its witness list given to them before the trial started. At the noon recess, Simmons' attorneys were given unrestricted access to speak with Lee before they were to cross examine her. The Government's attorney and its case agents did not attend that meeting. Simmons' attorneys were given access to the Government's witness, in spite of there being no requirement to do so, in the interests of fairness. Simmons complains that his rights were violated by a witness who incriminated him in the very criminal conduct he was convicted of. Simmons' attorneys were able to conduct an interview with the witness and conduct effective cross examination. He was entitled to no more than that. More importantly, Simmons would not have been able to disqualify a Government witness because of the lack of identification of that witness to Simmons before trial. Simmons' attorneys were not ineffective for failing to make an objection which would have been overruled.

## CONCLUSION

For the foregoing reasons, Simmons' § 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Simmons has not made a substantial showing of the denial of a federal constitutional right.

Dated this 16th day of September, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE